IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-02836-CNS-NRN

CAMDENNE STOVALL,

Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,

Defendant.

---

**ORDER GRANTING PLAINTIFF'S OPPOSED AMENDED MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT (ECF NO. 63) AND DENYING PLAINTIFF'S MOTION TO STRIKE DEFENDANT'S DESIGNATION OF NON-PARTY (ECF NO. 35)**

---

**N. REID NEUREITER**
**United States Magistrate Judge**

This matter is before the Court pursuant to orders issued by Judge Charlotte N. Sweeney, ECF Nos. 36 and 65, referring Plaintiff Camdenne Stovall's Motion to Strike Defendant State Farm Mutual Automobile Insurance Company's ("Defendant" or "State Farm") Designation of Non-Party Pursuant to Colo. Rev. Stat. § 13-21-111.5 ("Motion to Strike"), ECF No. 35, and Plaintiff's Opposed Amended Motion for Leave to File First Amended Complaint ("Amended Motion to Amend"), ECF No. 63. The Court has taken judicial notice of the Court's file, and considered the applicable federal and state statutes and case law. As set forth below, it is hereby **ORDERED** that

- Plaintiff's Amended Motion to Amend, ECF No. 63, is **GRANTED**, and
- Plaintiff's Motion to Strike, ECF No. 35, is **DENIED**.

## I. FACTUAL BACKGROUND[1]

On April 30, 2023, Plaintiff was injured in a car accident. ECF No. 6, ¶ 6. At the time of the crash, Plaintiff was in the passenger seat of a car driven by 19-year-old Leandrew Thomas, whose careless and potentially intoxicated driving allegedly caused the accident. *Id.* ¶¶ 7, 22. This case concerns the underinsured motorist ("UIM") coverage policy between Plaintiff and Defendant, and Defendant's allegedly wrongful failure to pay under that policy.

## II. PLAINTIFF'S AMENDED MOTION TO AMEND

### a. Procedural History

In the original complaint, Plaintiff brought three claims against Defendant: (1) breach of contract, (2) a first party statutory claim pursuant to Colo. Rev. Stat. §§ 10-3-1115 and 10-3-1116, and (3) a common law bad faith breach of insurance contract. *Id.* ¶¶ 69–85. On February 9, 2024—prior to the March 1, 2024 deadline for amendment of pleadings, *see* ECF No. 25 at 9—Plaintiff filed an Opposed Motion for Leave to File First Amended Complaint, which sought to add certain factual allegations and a fourth claim for punitive/exemplary damages. ECF No. 27. Defendant filed a response, ECF No. 38, and Plaintiff filed a reply, ECF No. 45. The Court held a hearing on the motion on May 1, 2024. ECF No. 46.

On July 8, 2024, Plaintiff filed the Amended Motion to Amend. ECF No. 63.[2] The Amended Motion to Amend is identical to the first motion to amend, except that Plaintiff

---

[1] Any citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.
[2] Upon filing of the Amended Motion to Amend, the original motion to amend (ECF No. 27) was no longer at issue. ECF No. 72.

seeks to withdraw her breach of contract claim. ECF No. 63 at 5; *compare* ECF No. 27-4 (original proposed First Amended Complaint), *with* ECF No. 63-4 (identical proposed Amended First Amended Complaint except that the breach of contract claim is removed).

The Court heard argument on the Amended Motion to Amend at a July 10, 2024 hearing. ECF No. 67. At the hearing, defense counsel stated that they did not oppose Plaintiff's request to remove the breach of contract claim. ECF No. 67. The Court then ordered the parties to submit additional briefing regarding whether Plaintiff must prove a breach of contract in order to prevail on claims for statutory and common law bad faith and for punitive/exemplary damages. ECF No. 68. Plaintiff and Defendant submitted additional briefing on the issue. ECF Nos. 69, 71.

**b. Legal Standards**

When a party seeks to amend pleadings after the deadline set in the scheduling order, the court's consideration is ordinarily subject to a two-prong analysis under Federal Rules of Civil Procedure 15 and 16. *See Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014) (holding that the movant must first establish good cause to amend the scheduling order under Rule 16(b)(4), and if good cause is established, the court then must determine whether amendment is proper under Rule 15(a));[3] *Pumpco, Inc. v. Schenker Int'l, Inc.*, 204 F.R.D. 667, 669 (D. Colo.

---

[3] Although the Amended Motion to Amend was filed after the deadline to amend pleadings, as explained above, the only difference between the original motion to amend (filed prior to the amendment deadline) and the Amended Motion to Amend is Plaintiff's unopposed request to remove the breach of contract claim. ECF No. 67. Further, Defendant has not raised any arguments relating to Rule 16. Consequently, the Court determines that the Rule 16 standard is not implicated in this dispute.

2001) (Rule 15(a) dictates that leave to amend "shall be freely given when justice so requires," and "[r]efusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment") (quoting *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir.1993)).

However, "the amendment at issue here concerns exemplary damages, which is governed by Colorado Revised Statute § 13-21-102." *Stanisavljevic v. Standard Fire Ins. Co.*, No. 1:22-cv-03287-RM-SBP, 2024 WL 1330125, at *2 (D. Colo. Mar. 28, 2024) (citing *Coomer v. Lindell*, No. 22-cv-01129-NYW-SKC, 2023 WL 4408254, at *7 (D. Colo. July 7, 2023)). This statute provides that "[i]n all civil actions in which damages are assessed by a jury for a wrong done to the person . . . and the injury complained of is attended by circumstances of fraud, malice, or willful and wanton conduct, the jury . . . may award him reasonable exemplary damages." Colo. Rev. Stat. § 13-21-102(1)(a). "'[W]illful and wanton conduct' means conduct purposefully committed which the actor must have realized as dangerous, done heedlessly and recklessly, without regard to consequences, or of the rights and safety of others, particularly the plaintiff." *Id.* § 13-21-102(1)(b). "Simple negligence cannot support such an award"; rather, "where a defendant is conscious of both its conduct and the existing conditions, and knew or should have known that injury would result, the requirements of [§] 13-21-102 are met." *Blood v. Qwest Servs. Corp.*, 224 P.3d 301, 314 (Colo. App. 2009).

Section 13-21-102 further provides that "[a] claim for exemplary damages . . . may not be included in any initial claim for relief" and "may be allowed by amendment to the pleadings only after the exchange of initial disclosures pursuant to rule 26 of the

4

Colorado rules of civil procedure and the plaintiff establishes prima facie proof of a triable issue." *Id.* § 13-21-102(1.5)(a). A plaintiff's burden in establishing a "prima facie" case under § 13-21-102 requires plaintiff to demonstrate a "reasonable likelihood that the issue will ultimately be submitted to the jury for resolution." *Stamp v. Vail Corp.*, 172 P.3d 437, 449 (Colo. 2007) (quoting *Leidholt v. Dist. Ct. In & For City & Cnty. of Denver*, 619 P.2d 768, 771 n.3 (Colo. 1980)). Prima facie proof "is merely a facial showing sufficient to prove a matter in the absence of contradictory evidence." *Stanisavljevic*, 2024 WL 1330125, at *3 (quoting *Rosania v. Grp. O, Inc.*, No. 13-cv-00398-MSK-BNB, 2014 WL 679884, at *3 n.4 (D. Colo. Feb. 20, 2014)). "The existence of a triable issue on punitive damages may be established through discovery, by evidentiary means, or by an offer of proof." *Leidholt*, 619 P.2d at 771. When assessing a plaintiff's request to add a claim for exemplary damages, courts view the evidence in the light most favorable to the moving party. *Am. Econ. Ins. Co. v. William Schoolcraft, M.D., P.C.*, No. 05-cv-01870-LTB-BNB, 2007 WL 160951, at *3–4 (D. Colo. Jan. 17, 2007).

      Courts in this District have held that "there is no direct conflict between this statute and the Federal Rules of Civil Procedure, and that application of the statute would not necessarily result in forum shopping or the inequitable administration of the law," and consequently, "§ 13-21-102, rather than Rules 15(a) or 16(b), controls whether to permit the amendment of a claim for exemplary damages." *Coomer*, 2023 WL 4408254, at *4. "Even with the application of § 13-21-102, however, the court may deny a motion to amend to add exemplary damages because of delay, bad faith, undue expense, or other demonstrable prejudice." *Franklin D. Azar & Assocs., P.C. v. Exec. Risk Indem., Inc.*, No. 22-cv-01381-RMR-NRN, 2023 WL 7130144, at *2 (D. Colo. Oct.

10, 2023) (citing *Stamp*, 172 P.3d at 449). This mirrors the Rule 15(a) standard. *Stanisavljevic*, 2024 WL 1330125, at *2.

### c. Analysis

#### i. Adding Claim for Punitive/Exemplary[4] Damages

Plaintiff argues that she should be permitted to assert a claim for exemplary damages against Defendant because State Farm claim adjuster Danielle Neely stated at her January 24, 2024 deposition that she reduced economic damages as a result of Plaintiff's choice not to wear a seat belt the night of the crash.[5] ECF No. 27-3 at 121:2-12. Plaintiff argues that this decision constituted a willful and reckless violation of Colo. Rev. Stat. § 42-4-2377, sufficient to substantiate a claim for exemplary damages. ECF No. 27 at 3. This statute provides that evidence of someone's failure to wear a seat belt

> shall be admissible to mitigate damages with respect to any person who was involved in a motor vehicle accident and who seeks in any subsequent litigation to recover damages for injuries resulting from the accident. Such mitigation shall be limited to awards for pain and suffering and *shall not be used for limiting recovery of economic loss and medical payments*.

Colo. Rev. Stat. § 42-4-2377(7) (emphasis added). Plaintiff further argues that Defendant's decision not to interview Plaintiff or Mr. Thomas or speak with the police constituted bad faith in its handling of Plaintiff's claim investigation, as Defendant denied UIM benefits without conducting a reasonable investigation. *Id.*

Defendant argues that Plaintiff has failed to meet her burden of establishing a prima facie case that Defendant engaged in willful or wanton conduct. Defendant

---

[4] Under Colorado law, "punitive damages" and "exemplary damages" have the same meaning. *RCHFU, LLC v. Marriott Vacations Worldwide Corp.*, 445 F. Supp. 3d 1327, 1340 (D. Colo. 2020) (citing *White v. Hansen*, 837 P.2d 1229, 1231 n.1 (Colo. 1992)).

[5] The parties continue to dispute whether Plaintiff was wearing a seat belt.

asserts that it denied benefits primarily because Defendant determined that Plaintiff was comparatively negligent and assumed risk by knowingly riding with someone Plaintiff knew had been drinking. ECF No. 38 at 2. Defendant argues it was only a "mistake . . . without consequence" that Ms. Neely's "additional assessment" incorrectly determined that Plaintiff was at fault for not wearing a seat belt. *Id.* at 2–3. Additionally, Defendant argues that Plaintiff has not presented any evidence that Ms. Neely was conscious of the mistake. *Id.* at 8. Defendant lastly argues that an exemplary damages claim is not appropriate where, as here, there is no evidence that Ms. Neely was an officer or manager of Defendant. *Id.*

The Court finds that Plaintiff has adequately established a prima facie case under § 13-21-102 for exemplary damages. Although Defendant now argues that the primary reason for its denial of benefits was Plaintiff's decision to ride with an intoxicated Mr. Thomas, Ms. Neely specifically testified that she believed that Plaintiff was negligent in not wearing a seat belt, that Defendant reduced Plaintiff's economic damages because of Plaintiff's decision not to wear a seat belt, and that Ms. Neely was unfamiliar with Colo. Rev. Stat. § 42-4-2377. ECF No. 27-3 at 121:2-7; *see also id.* at 5:17-6:1 ("Q: Tell me every reasonable basis you had for not paying Ms. Stovall's UIM benefits. A: I assessed liability on her in regard to her injuries. Q: What do you mean by you 'assessed liability'? A: The information reflected to me that she had been drinking and got into the vehicle with an intoxicated driver without her seat belt on. So I placed liability on her for those reasons."). The reduction of Plaintiff's economic damages in part because she was not wearing a seat belt was in contravention of Colo. Rev. Stat. § 42-4-2377.

7

Courts in this District have routinely permitted plaintiffs to add claims for exemplary damages where an insured's claim against their insurer has been denied because of an insurance adjuster's failure to familiarize themselves with the relevant facts or governing law, even where the adjuster did not knowingly commit an error. *See State Farm Mut. Auto. Ins. Co. v. Fisher*, No. 08-cv-01687, 2009 WL 1011194, at *4 (D. Colo. Apr. 15, 2009) (finding evidence that insurance claim adjuster "lacked familiarity with the governing case law," and expert testimony that the insurance company "engaged in bad faith" was sufficient to show willful and wanton conduct to support amendment to add exemplary damages); *Espinoza v. Am. Fam. Mut. Ins. Co.*, No. 08-cv-00709-REB-MEH, 2008 WL 4059851, at *2 (D. Colo. Aug. 29, 2008) (holding that defendant insurance company's acknowledgement that it "violated relevant state law in this matter; [an examination] finding [defendant] to be non-compliant with relevant state law in this matter; and expert deposition testimony stating [defendant] was in violation of relevant state law in this matter" constituted prima facie proof of a triable issue of exemplary damages); *Franklin D. Azar & Assocs., P.C. v. Exec. Risk Indem., Inc.*, No. 22-cv-01381-RMR-NRN, 2023 WL 7130144, at *3 (D. Colo. Oct. 10, 2023) (allowing exemplary damages claim where defendant withheld payment on undisputed claims and "willfully ignored relevant and material policyholder communications"); *Schimek v. Owners Ins. Co.*, No. 16-cv-02197-PAB-STV, 2017 WL 3621833, at *1 (D. Colo. Aug. 23, 2017).

A failure to investigate an insured's claim may also justify the addition of an exemplary damages claim. *See Cunningham v. Standard Fire Ins. Co.*, No. 07-cv-02538-REB-KLM, 2008 WL 4371929, at *2 (D. Colo. Sept. 23, 2008) ("The Court finds

8

that Defendants' alleged failure to engage in any investigation and/or action on Plaintiff's claims may demonstrate a prima facie case of heedless or reckless disregard for the consequences or rights of the insured.").

Additionally, while Defendant argues that it cannot be held liable for exemplary damages because Plaintiff does not allege that Ms. Neely was an officer or manager, Defendant fails to cite a single case applying this principle in the context of insurance, let alone to a UIM claim in particular. It would be unreasonable for the Court to apply this principle in this context, given the many instances in this District where exemplary damages claims have been allowed to move forward based upon the actions or inactions of a claims adjuster.

Therefore, the Court finds that Plaintiff has met her burden in establishing a prima facie case on the issue of exemplary damages.

### ii. Removing Claim for Breach of Contract

Although Defendant opposed the addition of a claim for exemplary damages, its counsel stated at the July 10, 2024 Motion Hearing, "We don't technically have an objection to them amending [to remove the breach of contract claim], but you're still required to prove entitlement to benefits . . . in bad faith or punitive damage penalties." ECF No. 67. When alleging unreasonable denial of benefits, as Plaintiff does here, "the plaintiff may need to put on a case materially indistinguishable from a breach of contract claim, but only as an element of establishing that the benefit is indeed 'covered.'" *Power Eng'g Co. v. Fed. Ins. Co.*, No. 21-cv-00345-CMA-NRN, 2022 WL 16572308, at *2 (D. Colo. Nov. 1, 2022) (quoting *Brookshire Downs at Heatherridge Condo. Ass'n, Inc. v. Owners Ins. Co.*, No. 17-cv-0871-WJM-NRN, 2019 WL 10946262 (D. Colo. Mar. 15,

9

2019). Nevertheless, it is not the role of the Court to act as Plaintiff's counsel. If Plaintiff wants to amend the Complaint to delete the breach of contract claim, then she will be allowed to do so.

### III. PLAINTIFF'S MOTION TO STRIKE DEFENDANT'S DESIGNATION OF NON-PARTY

#### a. Procedural History

On February 2, 2024, Defendant filed a Designation of Nonparties at Fault ("Designation"),[6] which states:

> [T]o the extent that Plaintiff's allegations that she is legally entitled to collect additional damages as a result of the subject motor vehicle accident are proven as true, Defendant designates" as nonparties at fault "[u]nknown social hosts who served underage Leandrew Thomas alcohol prior to the accident or provided him a place to consume alcohol, including but not limited to, Mr. Thomas' brother or brothers, or other social hosts.

ECF No. 32 at 1. The Designation further states that Plaintiff previously testified that, at the time of the crash, (a) Mr. Thomas was underage, (b) Mr. Thomas consumed alcohol provided by his brothers or other social hosts more than 3.5 hours before the accident, and (c) this consumption was the source of Mr. Thomas' intoxication at the time of the accident. *Id.* at 1–2. The Designation states that, if these statements are true, fault would be attributable to these nonparties under the Dram Shop Act, Colo. Rev. Stat. § 44-3-801. *Id.* at 2.

---

[6] Pursuant to Colo. Rev. Stat. § 13-21-111.5(3)(b), a designation of nonparty at fault must be filed within 90 days of the commencement of the action, unless the Court determines that a longer period is necessary. Plaintiff filed her initial complaint on September 26, 2023. ECF No. 6. On December 26, 2023, Defendant moved to extend the deadline to designate nonparties at fault through February 26, 2024. ECF No. 13. The Court granted the motion and denied Plaintiff's subsequent request to vacate its order, holding that "[t]he court does not decide the question of futility," and "[w]hether a bar that served drinks to the driver can properly be designated as a non-party at fault will be decided when an appropriate motion is filed, in the event the Defendant seeks to add the bar as a non-party at fault." ECF Nos. 14, 15, 24.

On February 27, 2024, Plaintiff filed the Motion to Strike. Plaintiff first argues that the Designation is insufficient because it does not adequately allege each element of a claim under the Dram Shop Act. ECF No. 35 at 3–5. Plaintiff additionally argues that the Designation is futile because nonparty designation under Colo. Rev. Stat. § 13-21-111.5 does not apply to statutory or common law bad faith claims. *Id.* at 5–6.

### b. Legal Standards

Colorado law provides:

> In an action brought as a result of a death or an injury to person or property, no defendant shall be liable for an amount greater than that represented by the degree or percentage of the negligence or fault attributable to such defendant that produced the claimed injury, death, damage, or loss.

Colo. Rev. Stat. § 13-21-111.5(1). Additionally:

> Negligence or fault of a nonparty may be considered if . . . the defending party gives notice that a nonparty was wholly or partially at fault . . . . The notice shall be given by filing a pleading in the action designating such nonparty and setting forth such nonparty's name and last-known address, or the best identification of such nonparty which is possible under the circumstances, together with a brief statement of the basis for believing such nonparty to be at fault.

Colo. Rev. Stat. § 13-21-111.5(3)(b). The statute "is designed to avoid holding defendants liable for an amount of compensatory damages reflecting more than their respective degrees of fault." *B.G.'s, Inc. v. Gross ex rel. Gross*, 23 P.3d 691, 694 (Colo. 2001), *as modified* (May 21, 2001).

> In considering whether a party has alleged a meritorious defense for the purpose of designating a non-party at fault, the court's inquiry is not an exacting one. Indeed, courts in this district have held that a designation alleges a meritorious defense if it minimally sets forth facts sufficient to permit a plaintiff to identify the transaction or occurrence which purportedly leads to the non-party's fault.

*Barradale v. Travelers Home & Marine Ins. Co.*, No. 20-cv-02355-NYW, 2021 WL 10131834, at *1 (D. Colo. Apr. 27, 2021) (citations and internal quotation marks

11

omitted). However, [a]lthough the nonparty designation need not prove the nonparty's fault or negligence, the designation must go beyond bald allegation and connect alleged facts with the established elements of negligence." *Acquest Holdings FC, LLC v. Johnson Controls, Inc.*, No. 23-cv-00636-CNS-STV, 2024 WL 1931697, at *2 (D. Colo. Apr. 8, 2024) (internal quotation marks and citation omitted). Unknown persons may be designated as nonparties. *See Pedge v. RM Holdings*, Inc., 75 P.3d 1126, 1128 (Colo. App. 2002).

    c. **Analysis**

        i. **Designation of Non-Party at Fault Pursuant to Colo. Rev. Stat. § 13-21-111.5**

Plaintiff argues that Defendant cannot name a non-insurer as a non-party at fault because Plaintiff's claims arise from "ordinary bad faith breach of an insurance contract," and therefore Defendant's Designation erroneously seeks to enforce UIM contract provisions against individuals who are not parties to the contract. ECF No. 35 at 5.

Courts in this district have reached divergent conclusions regarding whether § 13-21-111.5 may be applied in contract disputes generally. *Compare Sterling Const. Mgmt., LLC v. Steadfast Ins. Co.*, No. 09-cv-02224-MSK-MJW, 2011 WL 3903074, at *6 (D. Colo. Sept. 6, 2011) (holding that "[a]lthough [ ] § 13-21-111.5 appears to apply only to tort claims, the 10th Circuit has recognized that certain claims, although nominally designated as contract claims, nevertheless turn on the application of tort-like duties," and permitting a subcontractor to designate another subcontractor as a non-party at fault in a dispute regarding contractual indemnification in connection with a failed

12

pipeline construction), *with Acquest Holdings*, 2024 WL 1931697, at *6 ("Section 13-21-111.5 does not apply to breach of contract claims.").

However, this case concerns a particular type of contract and related claims—a UIM contract between a plaintiff policyholder and a defendant insurer—and claims for statutory and common law bad faith and exemplary damages related to that contractual relationship. The aim of UIM coverage "is to provide the insured a means to recover from the insurer all of the damages he or she is legally entitled to recover in an action against the tortfeasor up to the insured's policy limits." *USAA v. Parker*, 200 P.3d 350, 358 (Colo. 2009). "To demonstrate a contractual entitlement to UIM benefits, an insured has the burden to prove liability on the part of the underinsured motorist and damages exceeding the limits of the underinsured motorist's own coverage." *Giertz v. State Farm Mut. Auto. Ins. Co.*, No. 22-1114, 2023 WL 3728197, at *3 (10th Cir. May 26, 2023) (citing *Peterman v. State Farm Mut. Auto. Ins. Co.*, 961 P.2d 487, 493 (Colo. 1998)). "[A] finding of no legal liability on the part of the underinsured motorist will eliminate a claim under the insurance provider's UIM coverage." *Id.* (citing *State Farm Mut. Auto. Ins. Co. v. Brekke*, 105 P.3d 177, 188 (Colo. 2004)). For such claims, "when liability for the accident is at issue, the [defendant] insurer steps into the shoes of the alleged tortfeasor, as though the insurer were the driver. Thus, the trial of the UIM contract claim proceeds the same as if the case were tried against the other driver, with the focus being on the accident itself." *Giertz*, 2023 WL 3728197, at *3 (citing *Sunahara v. State Farm Mut. Auto. Ins. Co.*, 280 P.3d 649, 657 (Colo. 2012)). Accordingly, "rather than defending its own actions, an insurance company in a UIM action must essentially defend the tortfeasor's behavior." *Sunahara*, 280 P.3d at 658. Because the legal liability

13

of the underinsured motorist is an essential element of a UIM insurance claim, and, correspondingly, an essential element of the statutory and common law bad faith and exemplary damages claims, *see Power Eng'g Co.*, 2022 WL 16572308, at *2; *2506 6th St., LLC v. WestGUARD Ins. Co.*, No. 21-cv-01673-WJM-MDB, 2022 WL 17335952, at *5 (D. Colo. Nov. 30, 2022), a designation of a non-party at fault may be appropriate under § 13-21-111.5. *See Barradale*, 2021 WL 10131834, at *2, *6 (D. Colo. Apr. 27, 2021) (allowing defendant insurance company's designation of non-party at fault in UIM case between policyholder and defendant insurance company, and finding that defendant alleged a meritorious defense implicating a non-party polyethylene designer and manufacturer because plaintiff's independent medical exam showed that two of the plaintiff's post-accident surgeries were unrelated to the car accident, and were more likely the result of a design or manufacturing defect in the polyethylene lining put in place during a prior hip replacement surgery).

Additionally, While the Dram Shop Act prohibits "the person to whom the alcohol beverage was served" from bringing a "civil action" under the statute, the Dram Shop Act does not prevent a tortfeasor from designating that social host as a non-party at fault. Plaintiff does not cite any case law to the contrary.

Accordingly, because the claims in this case require a determination of the tortfeasor's (Mr. Thomas') liability, it is appropriate to permit the designation of a non-party at fault under § 13-21-111.5 in circumstances where a non-party may share a "degree or percentage of negligence or fault" in the accident. Colo. Rev. Stat. § 13-21-111.5(3)(a).

### ii. Sufficiency of Designation Pursuant to Dram Shop Act

Plaintiff further argues that the substance of Defendant's designation is insufficient because it does not contain allegations supporting each element a violation of the Dram Shop Act. ECF No. 35 at 2.

The Dram Shop Act provides in relevant part:

> No social host who furnishes any alcohol beverage is civilly liable to any injured individual . . . because of the intoxication of any person due to the consumption of such alcohol beverages, except when . . . [i]t is proven that the social host knowingly served any alcohol beverage to the person who was under the age of twenty-one years or knowingly provide the person under the age of twenty-one a place to consume an alcoholic beverage.

Colo. Rev. Stat. § 44-3-801(4)(a). The law "limits a vendor's or social host's liability for damage caused by an intoxicated person to the specific circumstances defined in the statute." *Przekurat by & through Przekurat v. Torres*, 2018 CO 69, ¶ 9, 428 P.3d 512, 514.

Both Plaintiff and Defendant have presented portions of Plaintiff's deposition testimony to support their positions. Plaintiff testified that Mr. Thomas told her in the hospital "that he was not 21, and . . . that he was drunk that night." ECF No. 39-1 at 41:4–5. Defense counsel then asked Plaintiff, "Did [Mr. Thomas] give you any information about where he obtained the alcohol, other than the shot he had with you?" *Id.* at 41:10–12. Plaintiff answered, "He told me he was drinking with his brothers before he came to pick me up." *Id.* at 41:13–14. Plaintiff also answered "no" when asked "did [Mr. Thomas] say where he had drinks with his brothers?" ECF No. 35-1 at 57:16–18.

Plaintiff first argues that she did not state in her deposition that Mr. Thomas consumed alcohol provided by his brothers prior to the accident, and "[t]he mere fact, if true, Mr. Thomas was drinking with his brothers does not make them a social host."

15

ECF No. 35 at 3, 4. Although Plaintiff did not explicitly state that Mr. Thomas told her that his brothers gave him the alcohol, the fact that Plaintiff named Mr. Thomas' brothers in direct response to a question about where Mr. Thomas obtained the alcohol might reasonably indicate Plaintiff's belief that Mr. Thomas had obtained the alcohol from his brothers.

Plaintiff further argues that the Designation "does not contemplate the 'social host' requirement and does not even mention the word 'knowingly.'" ECF No. 35 at 3–4. However, the Designation alleges that the brothers and/or unknown social hosts "knowingly provid[ed] alcohol to an underaged individual or knowingly provid[ed] a place for an underaged individual to consume alcohol." ECF No. 32 at 2. It is reasonable at this stage to assume that Mr. Thomas' brothers would have been aware of his age.

The Court finds that the Designation contains more than bald allegations, and satisfactorily contains a "brief statement of the basis for believing such nonparty to be at fault." Colo. Rev. Stat. § 13-21-111.5(3)(b).

## IV.  CONCLUSION

For the reasons set forth above, it is hereby **ORDERED** that

- Plaintiff's Amended Motion to Amend, ECF No. 63, is **GRANTED**, and
- Plaintiff's Motion to Strike, ECF No. 35, is **DENIED**.

It is further **ORDERED** that, on or before July 18, 2024, Plaintiff shall file a clean version of ECF No. 63-4, titled "First Amended Complaint."

Dated at Denver, Colorado this 17th day of July, 2024

_____
N. Reid Neureiter
United States Magistrate Judge